IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 06-cv-02454-REB-MJW

DUANE EBERLEIN,

    Plaintiff

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY,

    Defendant.

# ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following: 1) the **Defendants' Motion for Summary Judgment** [#31], filed June 22, 2007; and 2) the **Plaintiff's Motion for Partial Summary Judgment and Brief In Support** Thereof [#34], filed June 22, 2007. The plaintiff filed a response [#36] to the defendant's motion, and the defendant filed a reply [#38] in support of its motion. The defendant filed a response [#35] to the plaintiff's motion, and the plaintiff filed a reply [#37] in support of his motion. I deny the defendant's motion, and I grant the plaintiff's motion.

## I. JURISDICTION

I have putative jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and jurisdiction under 28 U.S.C. § 1332 (diversity)

.
## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is

necessary. ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995). FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986). Here, the parties present a set of stipulated facts, and ask the court to resolve an issue of law.

### III. FACTS

The question presented in the motions is what law is applicable to the insurance policy that is the basis of the plaintiff's claims. The defendant argues that Employee Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1001 - 1461, controls the plaintiff's claims and preempts the state law claims asserted by the plaintiff. The plaintiff argues that ERISA is not applicable and that his state law claims, therefore, are not preempted by ERISA. There is no dispute concerning any of the material facts relevant to this issue. The parties have filed a stipulation [#27], filed May 24, 2007, outlining an agreed statement of certain facts. The parties' statements of the relevant material facts in their briefs are coincident.

The plaintiff, Duane Eberlein, was employed by Associated Anesthesiologist

Medical Group (Associated) from May 1, 1992 until September 1, 1992. When Eberlein was employed by Associated, Associated maintained an employee welfare benefit plan that was governed by ERISA. As a plan participant, Eberlein was eligible for coverage under a disability insurance policy issued by the defendant, Provident Life and Accident Insurance Company (Provident). On or about May 1, 1992, Provident issued a disability insurance policy covering Eberlein. Provident issued this policy to Eberlein while Eberlein was employed by Associated.

Associated purchased several individual disability policies for its employees, and Associated paid the disability insurance premiums for certain of its employees, including Eberlein. Provident issued individual policies, with separate policy numbers, to each covered employee. Because Associated purchased several individual disability policies for its employees, Provident assigned a risk group number to Associated. The risk group number was 53574. During Eberlein's employment with Associated, Provident billed Associated for the premiums due under Eberlein's policy. This arrangement was part of Provident's Salary Allotment Plan. Under the Salary Allotment Plan, Associated agreed to guarantee the purchase of disability insurance policies for three or more employees of Associated and to make the necessary premium payments to Provident through payroll deductions or otherwise. Based on this arrangement, Provident gave Associated a discount of fifteen percent on the premium for each policyholder.

The parties agree that at the time Provident issued Eberlein's disability policy, and for the duration of Eberlein's employment with Associated, the policy was part of an employee welfare benefit plan established and maintained by Associated. During the

3

term of Eberlein's employment, both the plan and Eberlein's disability insurance policy were governed by ERISA. I agree that these stipulated conclusions of law are correct.

Eberlein left his employment with Associated on September1,1992. Associated requested that Eberlein be removed from its risk group and from its Salary Allotment Plan with Associated, and Associated complied with this request. Neither the Associated employee welfare benefit plan nor the Associated disability insurance policy contained a provision that permitted Eberlein to continue his coverage under the disability policy, or to convert his coverage under the policy to any other type of disability coverage. However, on September 24, 1992, Provident sent a letter to Eberlein. *Plaintiff's motion for summary judgment*, Exhibit B. In the letter Provident told Eberlein: "Now, even though your policy is no longer paid through Risk # 53574, ASSOC. ANESTHESIOLOGIST MEDICAL GROUP, you can continue this policy and retain the multi-life discount." *Id*. "All you have to do is specify your choice of payment, sign this letter and return it to us along with your check . . . ." *Id*. Eberlein indicated that he wished to pay premiums on a quarterly basis, signed the letter, and returned it to Provident before the deadline specified in the letter. *Id*. As provided in Provident's September 24, 1992, letter, Eberlein personally has paid the premiums for the policy since October of 1992. Eberlein's disability policy continuously has carried the same policy number that was assigned to Eberlein's policy at its inception in May, 1992.

Associated continues to maintain its Salary Allotment Plan, and continues to make premium payments to Provident through payroll deductions or otherwise. Associated continues to receive a discount on each policyholder's premium, and continues to have a risk group number assigned by Provident. Since September, 1992,

4

however, the premiums for Eberlein's disability insurance policy have not been paid through Associate's Salary Allotment Plan, and Eberlein's policy has not been tied to Associated's risk group number.

Eberlein has made a claim for coverage under the policy, and Provident has refused to provide the coverage to which Eberlein claims he is entitled. Based on this coverage dispute, Eberlein asserts two claims for relief in his Amended Complaint [#3], filed December 6, 2006. Eberlein asserts a claim for bad faith breach of insurance contract, and a claim for breach of insurance contract. Both of these claims are claims under the law of the state of Colorado. Provident argues that Eberlein's disability policy is governed by ERISA, and that ERISA preempts Eberlein's state law claims.

## IV. ANALYSIS

ERISA governs any "employee benefit plan" if the plan is established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a)(1). The term "employee benefit plan," as used in ERISA, includes both pension benefit plans and welfare benefit plans. 29 U.S.C. § 1002(3). Generally, a pension plan provides retirement benefits and a welfare plan provides life, health, disability, and similar benefits. 29 U.S.C. § 1002(1) & (2). At the inception of Eberlein's disability policy, the policy was part of Associated's welfare benefit plan.

As applicable to this case, an "employee welfare benefit plan" is defined is

> any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance ... benefits in the event of . . . disability
> . . . .

29 U.S.C. § 1002(1). Adopting the analysis of the Eleventh Circuit, the Tenth Circuit

has broken this definition into five elements.  ***Peckham v. Gem State Mut. of Utah***, 964 F.2d 1043, 1047 (10th Cir. 1992).  As applicable to this case, those elements are 1) a "plan, fund, or program;" 2) established or maintained; 3) by an employer; 4) for the purpose of providing disability benefits; 5) to participants or their beneficiaries.  Under 29 U.S.C. § 1144(a), the provisions of ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any ERISA employee benefit plan . . . ."

If Eberlein's disability policy still is part of Associated's employee benefit plan, or otherwise is an employee benefit plan under ERISA, then Eberlein's policy is governed by ERISA, and Eberlein's state law claims are preempted by ERISA.  If Eberlein's disability policy no longer is part of Associated's employee benefit plan, and otherwise is not an employee benefit plan, then Eberlein's policy is not governed by ERISA, ERISA does not preempt the application of state law to the policy, and Eberlein may pursue the state law claims he asserts in his Amended Complaint.  Thus, the key question is whether or not Eberlein's disability policy still is part of Associated's employee benefit plan or otherwise is an employee benefit plan under ERISA.  I conclude that the policy is not part of Associated's employee benefit plan and that ERISA does not govern the policy.

The courts that have addressed similar issues often speak of continuation policies and conversion policies.  ***See Powers v. United Health Plans of New England, Inc.***, 979 F. Supp. 64, 66 (D. Mass. 19997) (outlining statutory bases for continuation coverage and conversion coverage).  Generally, a continuation policy is a policy issued under the requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).  After an employment relationship is terminated,

6

COBRA requires the sponsor of an ERISA group health plan to provide plan beneficiaries with the option to elect to continue their coverage for a limited period following the termination of their employment. 29 U.S.C. § 1162(1) & (2)(A)(i). Many courts have held that continuation coverage is governed by ERISA because the coverage is the same as the coverage provided while the former employee was employed and covered under an ERISA plan, the continued coverage is required by ERISA, and the continued coverage places ongoing administrative burdens on the employer. **See, e.g., Demars v. CIGNA Corp.**, 173 F.3d 443, 447 (1st Cir. 1999); **Mimbs v. Commercial Life Ins. Co.**, 818 F. Supp. 1556, 1560 - 1561 (S.D. Ga. 1993).

Conversion coverage, on the other hand, generally refers to the right to convert group coverage provided under an ERISA plan to individual coverage. A right to convert can exist under COBRA, if the plan is a health plan, or can be a contractual right under the terms of an insurance policy. Under varying circumstances, some courts have held that a conversion policy still is governed by ERISA after the conversion, and some have held that a conversion policy is not governed by ERISA after the conversion. **See, E.g., Painter V. Golden Rule Ins. Co.**, 121 F.3D 436, 439 – 440 (8TH Cir. 1997) (conversion policy came into being as a result of the insured exercising her right under employer's group policy to obtain the conversion policy; conversion policy, thus, is a component of employer's ERISA plan, and is governed by ERISA); **Demars**, 173 F.3d 443, 447 (conversion policy not an ERISA controlled employee welfare benefit plan when former employer had no ongoing administrative and financial ties to the policy).

Eberlein's policy does not fit precisely the usual concepts of continuation or

conversion policies. A disability policy carries no rights under COBRA, so Eberlein's policy carried no statutory right to continuation or conversion. Eberlein's policy originated as an individual policy, although the policy was provided through an employee benefit plan. The policy provided no right for Eberlein to continue his coverage after his employment with Associated ended, and the policy did not include a right to convert the policy from group coverage to individual coverage. There was no need for such a conversion, if Eberlein's coverage were to continue, because the policy originated as an individual policy. The only reason Eberlein was able to continue his coverage under the policy was that Provident made an offer to Eberlein in which Provident offered to continue Eberlein's coverage under the policy on essentially the same terms after Eberlein's employment with Associated ended.

Provident argues that Eberlien's policy must be considered to be part of an ERISA controlled employee benefit plan because 1) the policy originated with an employee benefit plan; 2) post-employment, the policy remained in force under the same policy number and no new policy was issued; 3) post-employment, Eberlein continued to benefit from the employer's premium discount, and the premiums due under the policy did not change; 4) post-employment, the terms of the policy remained unchanged; and 5) post-employment, Associated's welfare benefit plan continued to operate.

As Provident notes, these circumstances are nearly identical to the circumstances discussed in ***Massachusetts Casualty Insurance Co. v. Reynolds***, 113 F.3d 1450, (6th Cir. 1997). In ***Massachusetts Casualty***, the employer purchased individual disability insurance policies for each employee, including Reynolds. The

8

employer received a ten percent reduction in premium as long as at least five employees were insured under similar policies.  When Reynolds' employment with the employer ended, Reynolds began to pay the premiums on his disability policy.  The self-paid premiums were ten percent higher because Reynolds no longer had the advantage of the employer's ten percent premium discount.  The individual policy that had been issued to Reynolds as an employee continued in effect, post-employment.

The ***Massachusetts Casualty*** court held that ERISA continued to control the policy post-employment.  The court reasoned that "(b)ecause Mr. Reynolds' coverage remained in effect under the same policy that had been in force since (he first was employed by the employer), his post employment coverage bears a strong resemblance to" COBRA continuation coverage.  113 F.3d at 1453.  The court agreed with the analysis of ERISA's application to COBRA conversion coverage as stated in ***Mimbs v. Commercial Life Ins. Co.***, 818 F. Supp. 1556, 1560 - 1561 (S.D. Ga. 1993).  In ***Mimbs***, the court held that claims that a defendant failed to provide and verify coverage under a COBRA continuation group health coverage plan, and a claim for failure to pay benefits under such coverage, all relate to an ERISA plan and are preempted by ERISA.  ***Id***.

Eberlein argues that his disability policy does not constitute an ERISA employee welfare benefit plan because the policy does not satisfy the definition of such a plan provided in ***Peckham v. Gem State Mut. of Utah***, 964 F.2d 1043, 1047 (10th Cir. 1992).  Eberlein argues also that his disability policy long has been separated from Associated's ERISA controlled employee welfare benefit plan.  Absent any connection to an ERISA plan, Eberlein asserts, his policy is not regulated by ERISA.

9

Eberlien notes several facts in support of his argument that his policy cannot be considered to be part of an ERISA controlled employee benefit plan: 1) Eberlein's enrollment in Associated's ERISA plan was terminated when Eberlein's employment with Associated ended; 2) Eberlein had no statutory or contractual right to continue his disability policy when he left Associated; 3) Associated does not keep records concerning Eberlein's policy, does not administer premium payments, and has no involvement with the policy; 4) Eberlein's policy is a contract between Provident and Eberlein, and is independent of any ERISA plan; 5) post-employment, Eberlein has requested, and Provident has approved, certain changes to the terms of Eberlein's policy. Based on these circumstances, Eberlein argues that his policy is not a continuation policy and is not substantially similar to a continuation policy. Rather, Eberlein asserts, his policy is akin to a conversion policy that has been separated completely from the ERISA plan with which the policy originated.

Applying the definition of an employee welfare benefit plan as stated in 29 U.S.C. 1002(1), and the elements of that definition as stated in ***Peckham v. Gem State Mut. of Utah***, 964 F.2d 1043, 1047 (10th Cir. 1992), I agree with the First Circuit's conclusion that this "nearly tautological definition offers little guidance." ***Demars v. CIGNA Corp.***, 173 F.3d 443, 445 (1st Cir. 1999). I agree also with the analysis of the ***Demars*** court, which emphasized the two cardinal purposes of ERISA as the key guides to resolving issues like that presented by Eberlein's policy.

> In passing ERISA, Congress's purpose was twofold: to protect employees and to protect employers. Congress wanted to safeguard employee interests by reducing the threat of abuse or mismanagement of funds that had been accumulated to finance employee benefits, while at the same time safeguarding employer interests by eliminating the threat of conflicting and inconsistent State and local regulation of employee benefit

plans.

* * * *

Congress placed into ERISA an express disavowal of any intent to regulate insurers qua insurers. See 29 U.S.C. § 1144(b)(2).

***Demars v. CIGNA Corp.***, 173 F.3d 443, 446 (1st Cir. 1999) (quotation and citations omitted).

***Demars*** concerned a disability insurance policy provided to an employee by an employer. The policy included a conversion clause that permitted the employee to convert from group disability coverage to an individual policy when their employment came to an end. The plaintiff, Demars, converted her policy to an individual policy when her employment ended. The ***Demars*** court found that Demars's conversion policy did not implicate either of ERISA's key purposes. Demars's former employer did not manage the policy or any funds tied to the policy, so there was "no risk of Demars's former employer abusing or mismanaging these funds" because it had no tie to the funds. 173 F.3d at 446. The same is true in Eberlein's case. ERISA's "uniformity of regulations concern is equally attenuated." ***Id***.

> "Congress intended [ERISA] pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." ***Fort Halifax [Packing Co., Inc. v. Coyne]***, 482 U.S. [1] at 11, 107 S.Ct. 2211 [1987]. Thus, "an employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer." ***Belanger [v. Wyman-Gordon Co.]***, 71 F.3d [451] at 454 [1st Cir. 1995)]. Under this analysis, conversion policies are not ERISA plans, because employers do not bear any administrative or financial responsibility for them.

***Demars***, 173 F.3d at 446. Eberlein's former employer, Associated, bears no administrative or financial responsibility for Eberlein's policy.

The ***Demars*** court contrasted the nature of continuation coverage as mandated by COBRA. *Id*. at 447. "Given employers' ongoing administrative and financial involvement, courts have found that claims related to COBRA coverage are preempted by ERISA." *Id*. "COBRA coverage is not subject to ERISA regulation merely because the terms of the coverage 'continue' the specific terms of the employer's ERISA plan; rather, COBRA coverage is subject to ERISA regulation because it implicates both of ERISA's cardinal purposes." *Id*. at 449. "[W]hat matters for ERISA purposes is not the nature of the conversion policy but rather the nature of the employer's ongoing administrative and financial ties to the policy. If no such ties exist, the policy should not be subject to ERISA regulation." *Id*. at 450.

The similarities between Eberlein's coverage when he was employed by Associated and his post-employment coverage, as noted by Provident, make Eberlein's current coverage appear to be a continuation of the coverage he first obtained while he was covered by Associated's ERISA plan. However, as noted in ***Demars***, these similarities do not address the key issue: the nature of the employer's ongoing administrative and financial ties to the policy. It is undisputed that Associated has had no administrative or financial ties to Eberlein's disability policy since Eberlein's employment with Associated ended. If no such ties exist, then the policy is not subject to ERISA regulation. Thus, I conclude that Eberlein is entitled to summary judgment holding that his state law claims concerning his disability policy are not preempted by ERISA.

**ORDERS**

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion for Summary Judgment** [#31], filed June 22, 2007, is **DENIED**; and

2. That the **Plaintiff's Motion for Partial Summary Judgment and Brief In Support** Thereof [#34], filed June 22, 2007, is **GRANTED**.

Dated March 20, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**